

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: February 11, 2022.**

_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO. 19-50900-cag |
| | | SUBSTANTIVELY CONSOLIDATED |
| LEGENDARY FIELD EXPEDITIONS, | § § | CHAPTER 7 |
| Debtor. | § | |

| | | |
|---|---|---|
| RANDOLPH OSHEROW,<br>CHAPTER 7 TRUSTEE, | § § § § | |
| Plaintiff. | § § | ADVERSARY NO. 21-05034-cag |
| v. | § § | |
| TRAVELERS PROPERTY CASUALTY,<br>COMPANY OF AMERICA, | § § § | |
| Defendant. | § § | |

### ORDER GRANTING IN PART, DENYING IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 11)

Came on for consideration the above-numbered adversary proceeding and, in particular,

1

Travelers Property Casualty Company of America's ("Travelers" or "Defendant") Motion for Summary Judgment (ECF No. 11) ("Motion or MSJ"). Randolph Osherow ("Trustee" or "Plaintiff") filed his Response (ECF No. 18), and Defendant filed its Reply (ECF No. 21).[1] The Court took the matter under advisement without the necessity of a hearing. After considering the pleadings and arguments contained therein, the Court finds that the Motion should be granted in part, and denied in part.

This Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 (a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) because it involves a proceeding to determine, avoid, or recover a preference. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is referred to the Court pursuant to the District Court's Standing Order of Reference. The parties have consented to this Court's authority to enter a final order. (ECF Nos. 9 and 10).

<u>**BACKGROUND**</u>

AAF Players LLC DBA Alliance of American Football was a professional American football league founded in 2018. The league consisted of eight teams in the southern and western United States. The league played for part of the 2019 season before disbanding and filing for Chapter 7 bankruptcy protection on April 17, 2019. On April 17, 2019, AAF Players, LLC; AAF Properties, LLC; Legendary Field Exhibitions, LLC; and Ebersol Sports Media Group, Inc. (collectively, "AAF") each filed a chapter 7 bankruptcy case in this Court. After a hearing on July 3, 2019, the cases of all the AAF debtors were substantively consolidated into one lead case numbered 19-50900-cag (Case No. 19-50900, ECF No. 150).

During its brief existence, AAF was required by law to maintain workers' compensation insurance. *See* Ga. Code Ann. §§ 34-9-120,34-9-121(a) (West 2021) (workers compensation

---

[1] "ECF" denotes electronic filing number in Adversary No. 21-05034-cag.

insurance required by businesses in Georgia) and Ga. Code Ann. § 34-9-126 (employer must submit evidence of workers compensation coverage to Georgia's State Board of Workers Compensation). Because AAF was unable to obtain this insurance in the voluntary market, AAF applied to Georgia's Workers' Compensation Insurance Plan, an "assigned risk plan" established by the State of Georgia. *See* Ga. Code Ann. § 34-9-133. Many states, such as Georgia, have established assigned risk plans as a "market of last resort" for companies unable to obtain required insurance. Private insurers, like Travelers, are required to participate in the assigned risk system and are randomly assigned applications to issue policies. *See* Ga. Comp. R. & Regs. 120-2-38-.07.

AAF submitted its application to the National Council of Compensation Insurance ("NCCI"), which serves as the Administrator for Georgia's Assigned Risk Workers' Compensation Insurance Plans. NCCI bound the assigned risk coverage and assigned the application to Travelers to issue an assigned risk workers compensation policy. *See* Belins Declaration, ¶ 4, at page 3, and Exhibit 1 thereto.[2] Thereafter, Travelers issued to AAF its *Workers Compensation and Employer's Liability Policy* (policy number R6EJUB-1K75553-8-18) with a policy period of December 7, 2018 through December 7, 2019 (the "Policy"). *See* Belins Declaration, ¶ 4, at page 3, and Exhibit 2 thereto (a copy of the Policy).

Because the Policy premium exceeded $250,000, the Policy was subject to NCCI's Loss Sensitive Rating Plan ("LSRP") requirements. *See* Belins Declaration, ¶ 5, at page 3, and Exhibit 2 thereto (the LSRP Endorsements and NCCI Guide included with the Policy). According to Defendant, unlike guaranteed cost assigned risk workers' compensation policies, which have a set and established premium that does not change or adjust based on losses, an LSRP policy has premiums that adjust based on losses incurred during the policy period. As such, the insured bears

---

[2] Mary Ellen Belins provided two declarations in support of the Motion. The first declaration is attached to the Motion (ECF No. 11) and the amended declaration is attached to Defendant's Reply (ECF No. 21).

some of the risk for claims during the policy period. The LSRP requires that the insured make a "contingency deposit" equal to 20% of the premium. Per the terms of the LSRP, the contingency deposit "serves as collateral for premium that may be due to the assigned carrier as a result of losses incurred during the policy term." *See* Belins Declaration, ¶ 6, at page 4.

At the inception of the Policy, AAF owed a total of $3,521,671. This amount represents the initial premium and certain other charges in the amount of $2,935,452, plus the LSRP deposit in the amount of $586,219. On January 9, 2019, AAF made a down payment of the premium in the amount of $1,467,726 (equal to one half of the initial premium). *See* Belins Declaration, ¶ 6, at page 4. On January 14, 2019, Travelers sent an invoice for the remaining balance of $2,053,945 (equal to the remaining initial premium of $1,467,726 plus the LSRP deposit of $586,219). On January 22, 2019, AAF made a second payment in the amount of $1,467,727 (equal to the second half of the initial premium plus one dollar). *See* Belins Declaration, ¶ 7, at pages 4 -5. Stated differently, the January 22, 2019 payment from AAF covered the remaining initial premium balance (plus one dollar), but *not* the LSRP contingency deposit. Defendant asserts that the policy, applicable NCCI rules and regulations, and applicable insurance law required payment of the LSRP deposit

On February 11, 2019, Defendant sent an invoice for the remaining balance of $586,218 (equal to the amount of the LSRP contingency deposit minus one dollar), stating the payment must be received by March 1, 2019 as required under applicable assigned risk policy rules. Two days later, on February 13, 2019, Defendant sent a notice of cancellation pursuant to NCCI policy and law, stating that the Policy would be cancelled effective March 25, 2019, subject to reinstatement if the $586,218 was paid on or before that date. On March 22, 2019, AAF paid the outstanding amount of the contingency deposit of $586,218 (the "Transfer"). Defendant applied the Transfer

to the outstanding LSRP contingency deposit. The Policy was reinstated and full coverage under the Policy continued, protecting AAF against workers compensation claims under the Policy. *See* Belins Declaration, ¶ 8, at page 5. Trustee argues that the Transfer, made more than 100 days after it was due, more than 60 days after the initial premium payments were made, and only twenty-five days before Debtors voluntarily filed for chapter 7, is a preferential payment.

Trustee states that Debtors agreed to pay Travelers $3,521,671 (the "Premium"). *See* Policy at p. 9 of 128. Also, Trustee posits that Travelers admits the entire Premium amount was due at the inception of the Policy period. *See* Motion at ¶ 7 ("At the inception of the Policy, [Debtor] owed a total of $3,521,671…"); ¶ 16 (stating that Premium invoices show: "obligations owed, and amounts paid."). Trustee maintains that the Belins Declaration conclusively establishes this. ("At the inception of the Policy, … [Debtor] owed $3,521,671…") *Id*. at ¶ 20 ("When [Debtor] did not pay its Policy obligations in full…"). Further, Trustee argues that Debtors might owe more (or less) than the Premium based on the policy, but that there is no dispute Debtors owed the full amount of the Premium at the Policy's inception. Moreover, Trustee argues that the "total estimated premium" included an LSRP payment which acted as a deposit until the final amount due was determined. The LSRP amount was simply one component of the total Premium, which, like the other Premium components, was due upon issuance of the Policy. Trustee also argues that Debtors' bank statement indicates the Transfer was made on March 25, 2019. *See* Exhibit 1, Trustee Declaration and Exhibit 1-A, Debtors' bank statements. At no time was coverage rescinded, changed, or interrupted.

After AAF ceased operating and filed its Chapter 7 bankruptcy, the Policy was cancelled effective May 7, 2019. In September of 2019, Travelers calculated the LSRP retrospective rating

adjustment and determined total plan charges of $4,832,210 were due under the Policy and the LSRP rules governing the Policy. *See* Belins Declaration, ¶ 10, at page 6.[3]

### SUMMARY JUDGMENT STANDARD

Bankruptcy Rule 7056 applies Federal Rule of Civil Procedure 56(c) to adversary proceedings. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If summary judgment is appropriate, the Court may resolve the case as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To prevail on summary judgment, the moving party has the burden of showing the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). Rule 56 contemplates a shifting burden. Once a properly supported motion for summary judgment is presented, "the nonmoving party must rebut with 'significant probative' evidence." *Ferguson v. Nat. Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978) (citations omitted). If the record "taken as a whole, could not

---

[3] Prior to the Court considering the Motion, Plaintiff filed Trustee's Objections and Motion to Strike Declaration of Mary Ellen Belins (ECF No. 19) and Trustee's Objection to and Motion to Strike the Supplemental Declaration of Mary Ellen Belins (ECF No. 24). Defendant filed its Responses at ECF Nos. 22 and 27. The Court held a hearing on the Trustee's Objections and Motions to Strike on October 25, 2021, and for the reasons stated on the record, denied both Objections and Motions. (ECF Nos. 28 and 29). As such, the Court found that all of Defendant's summary judgment was competent, admissible evidence.

lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007). When there is no genuine issue for trial, the Court should grant summary judgment. *Id*.

<u>ANALYSIS</u>

I.      **Basis for Plaintiff's Cause of Action**

The Trustee's Complaint for preferential payment is stated as follows:

> The payments to Defendant are avoidable as preferential transfers under 11 U.S.C. § 547. An avoidable preferential transfer is a transfer made (i) within 90 days; (ii) on account of an antecedent debt; (iii) to or for the benefit of a creditor; (iv) made while the debtor was insolvent; and (v) that enables the creditor to receive more than it would have been paid in a chapter 7 bankruptcy.

> The payments were transfers of an interest in property of the Debtor. The payments occurred within 90 days of the petition date for amounts owed to the Defendant. The Debtor is presumed to be insolvent within the 90 days preceding the case (11 U.S.C. § 547(f)) and was, in fact, insolvent at the time of the payments. The payments would allow the Defendant to receive more than it would in a chapter 7 case.

> Under § 550(a) of the Code, the Trustee may recover the payments from "the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. §550(a). Defendant is both the initial transferee and the entity that benefited from the preferential transfers. Consequently, the Trustee is entitled to avoid the payments and recover the sum of $586,218.00, plus pre- and post-judgment interest from the Defendant.

Complaint (ECF No. 1, ¶¶ 11-13).

In its Answer, Defendant denies that the payment was a preferential transfer and alleges multiple affirmative defenses. (ECF No. 5). Relevant to this Court's analysis are four defenses: the transfer is not avoidable because it was not made on account of an antecedent debt; there was contemporaneous exchange between Debtors and Travelers; Travelers provided new value to Debtors; and the Transfer was made in the ordinary course of business. In addition, Defendant

counterclaims for its rights under 11 U.S.C. § 502(h)[4] and its costs and expenses because

Defendant asserts that Plaintiff failed to conduct the requisite due diligence in investigating its

preference claim under § 547.[5] The Fifth Circuit explained the policy considerations behind § 547:

> The bankruptcy code disfavors the transfer of the debtor's property in the ninety days before bankruptcy. Accordingly, the bankruptcy code allows the trustee to avoid such transfers. *See* 11 U.S.C. §§ 547(b)(1)-(5). The policy reasons underlying this statutory provision have been stated thusly:
>
> [T]o prevent the debtor during his slide toward bankruptcy from trying to stave off the evil day by giving preferential treatment to his most importunate creditors, who may sometimes be those who have been waiting longest to be paid. Unless the favoring of particular creditors is outlawed, the mass of creditors of a shaky firm will be nervous, fearing that one or a few of their number are going to walk away with all the firm's assets; and this fear may precipitate debtors into bankruptcy earlier than is socially desirable.

*Gulf City Seafoods, Inc. v. Ludwig Shrimp Co., Inc (In the Matter of Gulf City Seafoods, Inc.)*,

296 F.3d 363, 367 (5th Cir. 2002) (citing *In re Tolona Pizza Prods. Corp.*, 3 F.3d at 1029, 1031

(7th Cir. 1993)).

## II.    DISCUSSION

Defendant provides four arguments as to why the Transfer was not a preference. The Court

will analyze each argument in turn.

### A. The Transfer is not avoidable under § 547(b)(1) because it was not made on account of an antecedent debt.

Section 547(b) states:

(b) Except as provided in subsections (c), (i), and (j) of this section, the trustee may,

---

[4] Unless otherwise noted, all references are to the Bankruptcy Code, Title 11 U.S.C. § _ *et seq.*

[5] Because the Court is granting summary judgment on three affirmative defenses, the Court does not need to address the issue of whether Plaintiff has conducted the requisite due diligence under § 547. Further, given that summary judgment is granted to Defendant, the Court does not reach the merits of Defendant's § 502(h) counterclaim nor was summary judgment sought on this counterclaim. Travelers is not precluded from seeking costs and expenses by separate pleading under applicable law.

based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property–
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made . . . .

11 U.S.C. § 547(b)(1)-(2).

Defendant argues that § 547(b)(2) requires that a transfer must be made "for or on account of an antecedent debt owed by the debtor before such transfer was made." § 547(b)(2). The Bankruptcy Code defines a "debt" as "liability on a claim." § 101(12). "Claim," in turn, is defined as a "right to payment." § 101(5). Thus, to be avoidable, "the debt, meaning liability on a right to payment, must predate the transfer ('antecedent') and must actually be 'owed' before the transfer had been made." *Rand Energy Co. v. Del Mar Drilling Co. (In re Rand Energy Co.)*, Case No. 98-80004-SAF-11, 2000 Bankr. LEXIS 1607, at *21 (Bankr. N.D. Tex. July 28, 2000); *DOTS, LLC v. Capstone Media (In re DOTS, LLC)*, 533 B.R. 432, 437-38 (Bankr. D.N.J. 2015) (debt is "antecedent" if incurred and owed before transfer).

In *DOTS*, the court found that the agreements between the parties (a Master Services Agreement and several Statements of Work) governed the parties' relationship and the agreements' terms—not the date of invoices issued to the debtor— determined when the debt arose for § 547(b) purposes. Defendant maintains that the Policy provides for the LSRP contingency deposit (like the pre-payments found in the *DOTS*) and the Policy also specifically states that "audit and retrospective premiums," which are addressed and paid by the LSRP contingency deposit, would be due as of the date of the billing for such premiums. *See* Policy, Exhibit 2 to Belins Declaration, Premium Due Date Endorsement (Endorsement WC 00 04 19 (00)). As a result, Travelers contends that the Transfer here, like the transfers in *DOTS*, was not a payment on account of an antecedent debt so the Trustee's claims fail.

Travelers argues that it applied the Transfer to the LSRP contingency deposit to cover potential future premiums that were not yet owed, but that might (and did) later become due after a retrospective rating adjustment. *See* Belins Declaration, ¶ 9, at page 6. Thus, Travelers argues the Transfer was not made on account of an "antecedent debt owed by the debtor before it was made." Therefore, the Transfer is not avoidable under § 547(b), and Travelers is entitled to summary judgment for this reason.

Conversely, the Trustee contends that the Transfer was made for or on account of an antecedent debt, owed by the Debtors before the transfer was made, and is an avoidable preference. Trustee notes that the Bankruptcy Code does not define the term "antecedent debt," however, in addressing the meaning of this term, the Fifth Circuit stated:

> The Bankruptcy Code defines a "debt" as a "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured". § 101(5). A debt is "antecedent" for purposes of § 547(b) if it was incurred before the alleged preferential transfer.

*Southmark Corp. v. Schulte Roth & Zabel*, 88 F.3d 311, 316 (5th Cir. 1996); *see also **DOTS, LLC**, 533 B.R. at 438.

Trustee notes that Travelers agrees a "debt" is liability on a claim and a claim is a "right to payment." (ECF No.11 at ¶ 13). Trustee alleges that Travelers omits from its analysis that a claim includes any right to payment regardless of whether the right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. A debt is "incurred," for the purpose of deciding if it is an "antecedent debt" on the date debtor first became legally bound to pay it. ***Sandoz v. Fred Wilson Drilling Co. (Matter of Emerald Oil Co.)***, 695 F.2d 833, 837 (5th Cir. 1983); *see also **Moser v. Bank of Tyler (In re Bobby G. Loggins)***,

513 B.R. 682, 696 at n. 47 (Bankr. E.D Tex. 2014) (citing *In re Ramba*, 416 F.3d 394, 399 (5th Cir. 2005)).

Trustee contends that there is no dispute the Transfer was part of the Premium and the Premium was owed by Debtors at the inception of the Policy. (ECF No. 11 at ¶¶ 7, 9). On more than one occasion, Travelers invoiced Debtors for the entire Premium amount, including the Transfer. Moreover, even if Debtors ultimately owed Travelers more (or less), and even if the Transfer was a "contingency deposit" ultimately subject to increase or decrease, the Trustee argues that as of the Policy's inception, Debtors owed Travelers the entire Premium, which included the amount of the Transfer.

Trustee argues that Travelers' reliance on *In re Dots, LLC* is misplaced. According to Trustee, in *DOTS* the parties' Master Services Agreement did not identify specific services or require payment unless and until the parties entered a Statement of Work detailing the services to be performed and the fee for those services. 533 B.R. at 439. Therefore, no amounts were "owed" under the Master Services Agreement. *Id*. Consequently, Trustee argues that the *DOTS* court concluded the creditor was not entitled to payment under the Master Services Agreement until the services in each Statement of Work were performed. *See id*. That is not the case here. Travelers issued the Policy, was obligated to (and did) provide coverage and, importantly, Debtors were required to pay the Premium, which included the Transfer. Travelers' argument that § 547(b) does not apply fails.

In Traveler's Reply, Travelers argues that the factual evidence makes clear that the Transfer funded the "LSRP contingency deposit" which is distinct from the Policy premium. Moreover, Trustee supplies no evidence suggesting otherwise, and none exists, given the language from the governing contract. *See* Policy, Extension of Info Page – Schedule WC 00 00 01(A)

(labeled as pages T00100-T00103) (showing LSRP Contingent Deposit as separate from Total Estimated Premium). Further, Congress added the phrase "owed by the debtor before the transfer was made" immediately after "antecedent debt" in § 547(b)(2). Travelers argues that the claim must be both (i) incurred and (ii) owed by the debtor prior to the subject transfer. Any other reading would render "antecedent" and "owed by the debtor before the transfer was made" meaningless or redundant. Travelers maintains that any potential future retrospective premium secured by the LSRP contingency deposit was not yet owed at the time of the Transfer. The summary judgment evidence indicates that no such billings had occurred at the time of the Transfer. Defendant argues the fact that the LSRP contingency deposit was due at the inception of the Policy is not the same as any potential future retrospective premiums (the actual debt) being owed. The fact that Travelers invoiced AAF for the LSRP contingency deposit, and was mandated to send the Cancellation Notice when the deposit was not funded by AAF, does not contradict Travelers' position.

Both parties argue that *In re DOTS, LLC* is dispositive of whether the LSRP deposit is an antecedent debt. Notably, there does not appear to be any reported cases dealing with the fact pattern presented here. In *DOTS*, debtors were retailers for women's apparel. 533 B.R. at 434. Capstone was retained to provide media services in several cities during the 2013 holiday season. *Id*. Debtors and Capstone entered a "Master Services Agreement" that governed the parties general business relationship and the services that Capstone would provide. *Id*. The dispute in *DOTS* related to six transfers during the 90-day preference period that debtors paid for multiple invoices. *Id*. at 434-35. Central to the *DOTS* court's decision was whether the payments were made pursuant to an antecedent debt. *Id*. at 437. The court began its analysis by noting that the Bankruptcy Code does not define the term "antecedent debt." *Id*. The court recognized the broad definition "claim" has in § 101(5)(A) but determined that a debt (liability on a claim) is antecedent if it is incurred

12

before the alleged preferential transfer. *Id*. at 438. Further, the court noted that an invoice estimating the cost of services to be provided in the future does not create a debt because the debt arises when the debtor receives the good or services and is then legally bound to pay, not when the creditor invoices the debtor. *Id*. at 438. (Citations omitted).

The ***DOTS*** court found that pursuant to the Master Services Agreement that Capstone would not carry out its media buying/placement services until the services had pre-planned approval and were paid in advance. *Id*. at 439. Therefore, the court reasoned that Capstone was not entitled to compensation until the services were performed. *Id*. The ***DOTS*** court found debtors' argument unpersuasive that the date the creditor choses to invoice the debtor for the works or services is the date that the debt is created. *Id*. Finally, the court concluded:

> In this case, although the invoices sent by Capstone do in fact include the term "Due on receipt," the same invoices also *expressly include* the term "pre-payment," which buttresses the parties' true intent with respect to the order of payment then services. As set forth above, it is evident from the course of dealings between the parties that the majority of work to be performed by Capstone would only be performed upon pre-payment by the Debtors. Indeed, Capstone could not perform Media Buying/Placement services unless it was in a pre-paid position.

*Id*. at 440.

Travelers argues correctly that the Policy provides for the LSRP contingency deposit (like the pre-payments found in the ***DOTS***) and the Policy also specifically states that "audit and retrospective premiums," which are addressed and paid by the LSRP contingency deposit, would be due as of the date of the billing for such premiums. *See* Policy, Exhibit 2 to Belins Declaration, Premium Due Date Endorsement (Endorsement WC 00 04 19 (00)). As a result, the Transfer here, like the transfers in ***DOTS***, was not a payment on account of an antecedent debt so the Trustee's claims fail. The Court grants summary judgment that there is no antecedent debt.

**B. The Transfer is not avoidable under § 547(c)(1) because it was a contemporaneous exchange for new value.**

Section 547(c)(1) provides that a trustee may not avoid a transfer under § 547 "to the extent that such transfer was – (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." § 547(c). This affirmative defense has three elements: "intent, contemporaneousness, and new value." *Post-Confirmation Comm. v. Tomball Forest, Ltd. (In re Bison Bldg. Holdings, Inc.)*, 473 B.R. 168, 175 (Bankr. S.D. Tex. 2012).

"Courts determine the parties' intent by examining evidence of the parties' mutual understanding of the payment arrangement and evidence of how payments were reflected on the parties' books." *Id.* (citing *Hechinger Inv. Co. of Del. Inc. v. Universal Forest Prods., Inc.*, 489 F.3d 568, 575 (3d Cir. 2007)). Travelers sent a notice of cancellation for non-payment of premium, stating:

> Unfortunately, we have not received the premium payment due on this policy. Therefore, your policy shown on this notice will be cancelled on the effective date of the cancellation shown above [March 25, 2019], at 12:00 a.m. . . . We . . . will be pleased to rescind the cancellation if we receive the minimum due before 12:01 am of the effective date of the cancellation. In that event, we will send you a notice of reinstatement continuing your coverage.

*See* Cancellation Notice – Exhibit 5 to Belins Declaration. *See also*, 01/14/19 Account Bill and 02/11/19 Account Bill – Exhibits 3 and 4 to Belins Declaration (showing obligations owed and amounts paid). Travelers argues that intent is shown by the continuing coverage under the Policy and AAF's intent for the same by acting on the offer and making the Transfer to rescind the cancellation and continue the Policy in effect.

Travelers argues that "contemporaneousness" "is a flexible concept that requires a case-by-case inquiry into all relevant circumstances – such as length of delay, reason for delay, nature

of the transaction, intentions of the parties, and possible risk of fraud – surrounding an allegedly preferential transfer." 473 B.R. at 176 (citing *Pine Top Ins. Co. v. Bank of Am. Nat'l Trust & Sav. Assocs.*, 969 F.2d 321, 328 (7th Cir. 1992)). Here, AAF made the payment on March 22, 2019, and Travelers sent the Reinstatement Notice on the same day. *See* Belins Declaration, ¶ 8, at page 5. As such, Travelers maintains that the exchange was clearly contemporaneous.

The Bankruptcy Code defines "new value" as "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation." § 547(a)(2). Travelers states that the provision of insurance coverage qualifies as new value. In *Official Comm. of Unsecured Creditors of Maxwell Newspapers v. Travelers Ins. Indem. Co. (In re Maxwell Newspapers)*, the court rejected the argument that insurance coverage was not new value, finding that "[e]xcluding insurance from the definition of new value would generate two results, both at odds with the rationale for the existence of the statutory exception: (i) it would ignore the value that inheres in assuming someone else's risk, and (ii) it would discourage insurers from renewing insurance policies with financially-distressed entities." 192 B.R. 633, 636 (Bankr. S.D.N.Y. 1996). Therefore, Travelers maintains the exchange was made for new value.

Plaintiff argues that Travelers has the burden to prove the "mutual understanding" of both Travelers and Debtor. The question of intent is "[t]he critical inquiry in determining whether there has been a contemporaneous exchange for new value…" *In re Bison Bldg. Holdings Inc.*, 473 B.R. at 175 (citing *McClendon v. Cal–Wood Door (In re Wadsworth Bldg. Components, Inc.)*, 711 F.2d 122, 124 (9th Cir. 1983)). Trustee states the Travelers' February 18, 2019, invoice that threatened cancellation if the late Premium payment was not made negates Travelers' intent to

exchange the Transfer for continuing coverage under the Policy and [Debtor's] intent for the same by acting on the offer and making the Transfer to rescind the cancellation and continue the Policy in effect. (ECF No. 11 at ¶ 17). Rather, Trustee posits that this conclusory and unsubstantiated argument is insufficient to meet Travelers' burden because Travelers offers no evidence of either party's intent. Trustee argues the Belins Declaration does not mention Travelers' intent and only speculation is offered to establish Debtors' intent. Moreover, Travelers offers no evidence of the intent behind payment of the Transfer such as whether the Transfer was made in response to the February 11 invoice, or in response to the February 13 invoice, because Debtors owed the Premium amount at the Policy's inception. Consequently, this absence of admissible evidence of intent is fatal to Travelers' defense. *See Watson v. Wells Fargo Bank, N.A.*, No. A-13-CA-722, 2014 WL 1453666, at *2 (W.D. Tex. April 14, 2014) (citing *Adams v. Travelers Indent. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006)) (finding unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.).

In the alternative, Plaintiff argues because there is no evidence of a contemporaneous exchange, there is a question of fact as to this element. Travelers argues that, as a matter of law, it has met its burden to prove contemporaneousness because the March 22 "notice of reinstatement" was issued on the same date Debtors made the Transfer. (ECF No. 11 at ¶ 18). Trustee maintains that this argument ignores that, as part of the Premium, the Transfer was due on the Policy's inception, but was made more than 100 days later—a gap that was not contemporaneous. *See In re NWL Holdings, Inc.*, 10–53535, 2013 WL 2436667, at *6 (D. Del. June 4, 2013) (finding that a payment due and paid within the same month coverage is provided is contemporaneous). In addition, Plaintiff notes that Travelers' argument also assumes the Policy was actually "cancelled" prior to the Transfer and then "reinstated." Travelers stated cancellation would not occur if

payment was made by March 25 (which it was), and, therefore, according to Plaintiff, the Policy remained "in full force as of the date of issue." Exhibit 6, *supra* at ¶ 11; *see also* Exhibit 5. Thus, Plaintiff reasons that there is a fact question as to "cancellation," "reinstatement," and whether the "reinstatement notice" reinstated anything at all.

Plaintiff states that what constitutes new value is a question of fact. ***PMC Marketing Corp. v. PDCM Assoc., S.E. (In re PMC Mktg. Corp)***, 518 B.R. 150, 157 (B.A.P. 1st Cir. 2014); ***Bison Bldg. Holdings.***,473 B.R. at 172. To support the "new value" element of its contemporaneous exchange defense, Travelers states: "the provision of insurance coverage qualifies as new value," citing ***Maxwell Newspapers***, 192 B.R. 633. (ECF No. 11 at ¶ 19). Plaintiff argues that this assertion is not evidence of new value.

Plaintiff argues that Travelers' reliance on ***Maxwell Newspapers*** is misplaced for several reasons. First, ***Maxwell Newspapers*** analyzed the applicability of § 547(c)(4), not § 547(c)(1). *See id.* at 632 (Insurer argued preference payments could not be avoided because payment "was replaced with subsequent new value..."). Second, the ***Maxwell Newspapers*** quote cited in the Motion was made only to address whether provision of insurance was a "service" within § 547(a)'s definition of "new value." Trustee argues the referenced quote was not a declaration that providing insurance was, *per se*, new value. *See id.* at 636; *see also* ***Davis v. I.P.H.F.A., Inc. (In re Amarillo Mesquite Grill, Inc.)***, 355 B.R. 826, 837 (Bankr. D. Kan. 2006) (finding payment of past due premiums was not new value stating, "nor does the fact that the insurers continued to provide insurance coverage to Amarillo or that Amarillo continued in business after the transfers constitute new value.").

Third, Plaintiff argues that ***Maxwell Newspapers*** is also factually dissimilar and, therefore, inapposite. In ***Maxwell Newspapers***, debtor purchased a policy providing coverage from March

20, 1991 through July 1, 1991. Debtor paid for this coverage in September 1991, after the policy expired. Debtor also renewed coverage for from July 1, 1991 through July 1, 1992. Payments on the new policy were due quarterly and, like a lease, each payment correlated with coverage for a quarter. ***Maxwell Newspapers***, 192 B.R. at 634. The debtor's first quarterly payment was made before the preference period. The second was made during the preference period. *See id*. The creditors' committee sought to recover the September payment and the second quarter payment. The debtor argued that the renewed policy was "new value" provided after the September payment.

Fourth, unlike ***Maxwell Newspapers***, Travelers promised to provide annual coverage in exchange for a single Premium payment which was due upon the Policy's inception. Moreover, Debtors did not pay an existing debt to get a second policy or make a monthly or quarterly payment. Trustee argues the facts here are not akin to a monthly lease or an annual renewal of insurance. Instead, Debtors bought one Policy, for which Travelers charged a single Premium, which was due (in its entirety) at the Policy's inception. Debtors did not conduct any new business with Travelers at (or after) the Transfer. Trustee argues that Debtors paid the remainder of the debt owed for the Premium and continued with coverage under the same annual Policy it had before. Therefore, no "new" coverage was provided contemporaneously with the Transfer. According to Trustee, "such a transaction falls squarely within the ambit of the preference law, rather than within its exceptions." ***Id***. at 637. As such, Trustee states that Travelers' MSJ pursuant to § 547(c)(1) should be denied.

Travelers' Reply notes that Trustee denies that the parties had the requisite intent, nor presented evidence, sufficient to create a fact issue. Travelers maintains that intent may be demonstrated through circumstantial evidence. *See, e.g.,* ***LA Capitol Fed. Credit Union v. Melancon (In re Melancon)***, 223 B.R. 300, 338 (Bankr. M.D. La. 1998) ("Circumstantial

evidence is used to establish intent all the time, in every conceivable context."). Moreover, Travelers argues that "a person intends the natural and foreseeable consequences of his voluntary actions." *Lee v. Lee Cty. Bd. of Educ.*, 639 F.2d 1243, 1267 (5th Cir. 1981). Travelers posits that the following pieces of circumstantial evidence are sufficient show each party's intent: (i) the Cancellation Notice, which Travelers was required to send to AAF, provided for cancellation of the Policy that would have resulted in the loss of required workers compensation coverage; (ii) the undisputed fact that AAF paid the outstanding obligation on or shortly before the date that cancellation would have taken effect (*i.e.*, March 25); and (iii) the fact that AAF was seeking additional and expanded coverage for its trainers and coaches as well as coverage in Nevada, which it could not obtain unless current on its Policy obligations. Supplemental Belins Declaration, ¶¶ 10-13.

Defendant argues Trustee confuses the issue by arguing that there was a 100-day gap between the Transfer and the beginning of the Policy Period (which was not even the initial estimated premium and LSRP contingency deposit payment due dates). The Court has found that the LSRP payment was due when the services or goods were rendered, so the Court agrees with Travelers that the operative date to measure if a transfer is contemporaneous is: (1) when the Transfer occurred, and (2) when the new value was provided. Further, the Court agrees with Travelers' argument that if no antecedent debt exists, there would be no liability under § 547(b) in the first place. The Transfer continued the benefits under the Policy going forward and allowed the immediate increase in coverage sought by AAF. *See* Supplemental Belins Declaration at ¶¶ 10-13 and Exhibits S4-S8.

The Court agrees that the provision of future insurance coverage is new value, as the court

recognized in *Maxwell Newspapers*. The Court finds unavailing Trustee's argument that *Maxwell Newspapers* concerns § 547(c)(1) rather than § 547(c)(4). Both sections utilize the same definition of new value, *i.e.* the definition contained in § 547(a). The Court finds the meaning of new value applies equally to cases under § 547(c)(4). Second, the Court agrees with the holding in *Maxwell Newspapers* that the provision of insurance is a service and provides new value. 192 B.R. at 636-7. Finally, the Court disagrees with Trustee's argument that *Maxwell Newspapers* reasoning is inapplicable to the case at bar because the case involved quarterly payments. The Court agrees with *Maxwell Newspapers* that insurance provided after an allegedly preferential payment counts as new value. The Transfer was required to be paid to obtain ongoing coverage so AAF could continue to operate. After the Transfer was made, AAF obtained significant new and expanded coverage immediately. Finally, the Trustee's reliance on *In re Amarillo Mesquite Grill, Inc.* is also misplaced. In that case, the payments were made for insurance coverage covering time periods that had already elapsed – the transfer was made in May for insurance coverage for the months of March and April. *Amarillo Mesquite Grill, Inc.*, 355 B.R. at 836. In this case, the Transfer provided ongoing, operationally-required coverage and expanded coverage going forward after the Transfer.

### C. Travelers argues in the alternative that the Transfer is shielded from avoidance under § 547(c)(4) because Travelers gave new value to the Debtors after the Transfer.

Travelers argues that it provided new value to Debtors after the Transfer in the form of additional insurance coverage, shielding the Transfer from avoidance from recovery under § 547(c)(4). Section 547(c)(4) provides that a trustee may not avoid a transfer to a creditor "to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor (A) not secured by an otherwise avoidable security interest; and (B) on account of which new value

the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor."

§ 547(c)(4).

As noted in this Order, courts have found that the provision of insurance coverage following a premium payment constitutes new value. ***Clark v. Frank B. Hall & Co. (In re Sharoff Food Serv.)***, 179 B.R. 669, 678 (Bankr. D. Colo. 1995) (finding that providing insurance constituted new value). In ***Sharoff Food Service***, the court calculated new value by determining the daily premium amount and multiplying it by the days of coverage following the transfer. 179 B.R. at 678.

Travelers states, relying on Belins Declaration, total plan charges amounted to $4,832,210, including a contingency deposit of $982,115. Deducting the $982,115 deposit charge results in fixed plan charges of $3,850,095 for the Policy period. The sum of $3,850,095 divided by 151 (the number of days in the policy period of December 7, 2018 to May 7, 2019) results in a daily plan charge of $25,497. After the Transfer on March 22, 2019, the Policy was re-instated, Travelers continued to provide full coverage to AAF under the Policy. *See* Belins Declaration, ¶ ¶8-10, at pages 5-6. There were 46 days from March 22, 2019 until the Policy was cancelled on May 7, 2019. Travelers covered and, in fact, continues to cover fully workers compensation claims of AAF under the Policy. Thus, Travelers provided new value after the Transfer worth $25,497/day x 46 days = $1,172,876.62.[6] This amount exceeds the amount of the Transfer and shields it completely from avoidance. Travelers argues this new value was not secured by an otherwise unavoidable security interest, and AAF did not make any transfers to or for the benefit of Travelers on account of the new value. Travelers states that Debtors never made any additional transfers to

---

[6] Travelers suggests another approach is to pro rate the losses paid by Travelers during the policy period ($2,128,315) by the period of the Policy following the Transfer (46/151). *See* 9/30/19 WC LSRP Calculation – Exhibit '7' to Belins Declaration (showing losses paid by Travelers as of 08/31/2019). This results in a new value calculation of $648,360.86, again exceeding the amount of the Transfer.

Travelers after the Transfer on March 22, 2019. *See* Belins Declaration, ¶ 10, at page 6. Thus, Travelers alleges the requirements of § 547(c)(4) are met and Travelers is entitled to summary judgment.

Trustee argues Travelers must prove the following elements for its "subsequent new value" defense: (i) Travelers extended new value to Debtors or on Debtors' behalf; (ii) the new value is unsecured; and the new value remained unpaid after the Transfer. *In re Bobby G. Loggins*, 513 B.R. at 713 (citing *G.H. Leidenheimer Baking Co. v. Sharp (In re SGSM Acquisition Co., LLC)*, 439 F.3d 233, 242 (5th Cir. 2006)). The subsequent new value defense relies on the same definition of new value as the contemporaneous exchange for new value defense. *See id*.

Plaintiff states that Travelers only support to avoid the Transfer for new value is Travelers' single, conclusory statement: "courts have found that the provision of insurance coverage following a premium payment constitutes new value." (ECF No. 11 at ¶ 22). Plaintiff maintains this statement is an oversimplification of the facts and fails to consider the specifics of this case. *See supra* at ¶¶ 26, 27. Moreover, Plaintiff argues that other courts have found payment of past due insurance premiums are not new value. *See, e.g.,* *In re NWL Holdings, Inc.*, 2013 WL 2436667, at *3 ("Here, there is no dispute that the premium installment due date was before the period of insurance coverage it paid. However, the Debtors did not pay the insurance premiums on time.… The failure to make those payments on time made them a payment on account of an antecedent debt."); *Peltz v. United Health Care (In re Bridge Info. Sys., Inc.)*, 299 B.R. 567, 571–73 (Bankr. E.D. Mo. 2003) (Premium payments found not to be new value because statutory grace period does not extend the time in debtor becomes obligated to pay premiums (the date incurred) and, therefore, late payments were antecedent debt.).

Plaintiff maintains that Travelers agreed to provide one full year of coverage in exchange for payment of the Premium, which was due at the Policy's inception. Further, as consistently recited in the Trustee's pleadings, the Premium included the Transfer. Plaintiff acknowledges the Premium was not paid when due but was eventually paid prior to cancellation. Trustee argues Travelers did not provide incremental, replacement, or renewal coverage in exchange for the Transfer. Rather, Travelers withdrew its warning of imminent cancellation, leaving the Policy intact with no changes to existing coverage. As a result, the Transfer was payment of an antecedent debt as a delayed, out of the ordinary course payment, only made after multiple attempts to invoice and pressure the Debtor.

Trustee states Travelers' analysis of the amount of alleged new value is not admissible summary judgment evidence because Travelers submitted no evidence to support its analysis. For example, although the Belins Declaration concludes the LSRP retrospective rating adjustment determined that total plan charges of $4,832,210 are due under the Policy, there is no analysis or explanation provided concerning how this number was calculated. *See* Belins Declaration, at ¶ 10. Plaintiff argues if Ms. Belins sought to make this statement at trial it would be excluded because it lacks foundation, is not made on Ms. Belins' personal knowledge, and Ms. Belins does not explain if she is qualified to calculate this sum. Similarly, Exhibit 7 to the Belins Declaration is a "conclusory, incomprehensible morass of numbers that would be inadmissible at trial" without more fulsome testimony to establish from where the data was derived, whether it was accurate, and how the amounts described therein were calculated. Furthermore, Plaintiff argues the adjustment of the Premium upon termination of the Policy was always expected and it is unclear how this changes that the Premium, including the Transfer, was due, owed, and paid without

interruption or change to the Policy coverage. This is not "new" value. Belins Declaration at ¶ 8, Policy at p. 60 of 128.

Finally, Trustee argues that Travelers seeks to calculate the alleged new value by using the "total plan charges," but there is no basis for such a calculation. No case cited by Travelers calculates alleged new value based on "total plan charges." *See* **In re Sharoff Food Serv.**, 179 B.R. at 678 (stating "the payment of insurance claims" does not constitute new value). Additionally, Travelers also includes a *per diem* rate through the Policy's post-petition cancellation date. Trustee argues Travelers is not entitled to allege "new value" provided post-petition. Trustee argues courts have concluded that new value advanced after the petition date should not be considered in a creditor's new value defense. *See* **Noreen Wiscovitch-Rentas v. PDM Assoc. (In re PMC Mktg. Corp.**, 518 B.R. 150, 157 (1st B.A.P. 2014) *(*citing **In re Friedman's Inc. v. Roth Staffing Companies, L.P. (In re Friedman's Inc.)**, 738 F.3d 547, 557 (3rd Cir. 2013) (noting that the vast majority of courts have concluded that new value advanced after the petition date should not be considered in a new value defense)

Travelers' Reply argues Trustee's cases that insurance coverage provided after a premium payment does not constitute new value are easily distinguishable. In **NWL Holdings**, the court held that the defendant "must establish that the transfer was made before new value was given." **Giuliano v. RPG Mgmt. (In re NWL Holdings, Inc.**), No. 08-12847, 2013 Bankr. LEXIS 2360, at * 26-27 (Bankr. D. Del. June 4, 2013). There, the court found that "the premiums the Debtors paid to [the defendant] were for future coverage as is the case with most insurance policies." *Id.* at * 27. The court denied summary judgment as to just one of the transfers because there was "no evidence presented about what period of insurance coverage [the transfer] provided." *Id.* Here, by contrast, Travelers has presented evidence as to the amount of new value specifically following

the Transfer, including the provision of new and expanded coverage. The ***Peltz*** case cited by the Trustee does not mention the new value defense. 299 B.R. 567.

The Trustee argues that Travelers' analysis of the amount of new value is unsupported by admissible summary judgment evidence. Travelers states that the cost and value of the insurance coverage for the truncated policy period was $3,850,095 (equal to $4,832,210 in Total Plan Charges minus a $982,115 contingency deposit included in the total). Travelers argues that this is established by the business record that Travelers attached to its Motion, *i.e.* Exhibit "7" to the Belins Declaration, Exhibit 7 to the Amended Belins Declaration, and Exhibit "FM2" to the Moylen Declaration, all of which are the 09/30/2019 WC LSRP Calculation. Travelers asks the Court to find that Exhibit 7 is properly authenticated business record which would be competent summary judgment evidence.

Travelers argues the Trustee has not challenged the portion of the Belins Declaration that serves as a business records affidavit. Likewise, the Supplemental Belins Declaration and the Moylen Declaration show that the 09/30/2019 WC LSRP Calculation is a business record containing relevant, accurate, and uncontested factual evidence. The Trustee provided no evidence to rebut these Declarations, and thus fails to demonstrate a fact issue on this point. The undisputed fact is that each day of coverage was worth $25,497 (equal to $3,850,095 divided by 151, the number of days in the truncated policy period). The Trustee argues that new value provided post-petition does not count. Travelers argues that the Court need not decide this issue of post-petition value because even if only pre-petition days are counted, there is still sufficient new value. According to the Trustee, there were 25 days between the Transfer and the petition date. (ECF No. 18 at ¶ 1). Therefore, Travelers calculates the total pre-petition value is $25,497/day x 25 days = $637,425. This new value is more than the amount of the Transfer and thus shields the Transfer

from avoidance under § 547(c)(4). Moreover, the value of the expanded coverage is included in this amount, further demonstrating that Travelers provided "new" value.

The Court agrees with Travelers. The case law Travelers provides demonstrates that the provision of insurance is new value. Additionally, Travelers was compelled to provide insurance to Debtors under Georgia insurance law. The continuing insurance Travelers provided is not part of the original Premium, but in furtherance of Travelers' obligation to provide insurance. The Court finds that the Belins and Moyer Declarations, as supported by Exhibit 7, are competent summary judgment evidence that Trustee has not rebutted. Without reaching the issue of whether post-petition value is new value under § 547(c)(4), the Court can find that there was new value provided pre-petition to exceed the amount of the Transfer. The Court finds that Travelers provided new value under § 547(c)(4), and the Transfer is not avoidable.

### D. Travelers argues that the Transfer cannot be avoided under § 547(c)(2) because the Transfer was made in the ordinary course of business of the parties and according to ordinary business terms.

Travelers asserts the Trustee may not avoid the Transfer because it was the payment of a debt of Debtors made in the ordinary course of business of AAF and Travelers, and the payment was made according to ordinary business terms. Under § 547(c)(2)(B), a trustee may not avoid a transfer "to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was . . . (B) made according to ordinary business terms." § 547(c)(2). Known as the "objective prong," this provision concerns whether the transfer is consistent with the "customary terms and conditions used by other parties in the same industry facing the same or similar problems." *Ciesla v. Harney Mgmt. Partners (In re KLN Steel Prods. Co.)*, 506 B.R. 461, 468-69 (Bankr. W.D.

Tex. 2014) (citing *Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Nat. Gas Corp. (In re Gasmark, Ltd.)*, 158 F.3d 363, 369 (5th Cir. 2002)).

Defendant states, "ordinary business terms refers to the *range* of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so *idiosyncratic* as to fall outside that broad range should be deemed extraordinary and therefore outside the scope" of this prong. *In re Gulf City Seafoods*, 296 F.3d at 368 (emphases in original) (citing *In re Tolona Pizza Prods. Corp.*, 3 F.3d at 1032-33).

Travelers maintains as a threshold matter, the alleged debt at issue (workers' compensation policy premium) was incurred in the ordinary course of business or financial affairs of AAF and Travelers. Debtors, like many other businesses, were required by law to maintain workers' compensation insurance. *See* Ga. Code Ann. §§ 34-9-120 and 34-9-121(a) (workers compensation insurance required by businesses in Georgia) and Ga. Code Ann. § 34-9-126 (employer must submit evidence of workers compensation coverage to Georgia's State Board of Workers Compensation). *See also* Belins Declaration, ¶ 3, at page 3. Travelers is in the business of providing workers' compensation insurance and, as part of the assigned risk pool, has issued assigned risk workers' compensation policies to numerous other businesses. *See* Belins Declaration, ¶ 3, at page 3.

Defendant asserts the Transfer was consistent with customary terms and conditions used by other parties in the same industry. The Fifth Circuit had stated that "for an industry standard to be useful as a rough benchmark, the creditor should provide evidence of credit arrangements of other debtors and creditors in a similar market, preferably both geographic and product." *In re Gulf City Seafoods*, 296 F.3d at 369. Travelers states the product is an assigned risk loss sensitive rating plan workers' compensation insurance policy. Moreover, this insurance is designed for

companies unable to obtain required insurance through the voluntary market, typically due to their lack of financial wherewithal. Thus, Travelers reasons it is common for companies utilizing this insurance to make a premium payment only after receiving a notice of cancellation, within the time permitted by law for reinstatement. *See* Belins Declaration, ¶ 11, at pages 6-7. Once assigned AAF's application, Travelers was compelled by law to provide the insurance coverage. *See* Belins Declaration, ¶ 4, at page 3. Travelers calculated the premium and deposit in accordance with the NCCI's Loss Sensitive Rating Plan requirements. *See* Belins Declaration, ¶ 11, at pages 6-7. Travelers sent out invoices as required by the rules. *Id*. When Debtors did not pay in full, Travelers sent Debtors a notice of cancellation, as required by the NCCI assigned risk rules and Georgia law. *See* Belins Declaration, ¶ 11, at pages 6-7. Travelers asks the Court to find the Transfer was made according to ordinary business terms and is immune from avoidance under § 547(c)(2)(B).

Trustee emphasizes that the ordinary course defense is available only if Travelers can meet its burden to establish the Transfer was consistent with "customary terms and conditions used by other parties in the same industry facing the same or similar problems." ***In re KLN Steel Prods.***, 506 B.R. at 468–69. Plaintiff maintains Travelers cannot meet this burden "by simply showing that (1) its arrangement with [Debtor] is similar to the credit arrangement [Travelers] has with other debtors, or (2) the arrangement is similar to [Debtor's] arrangement with other creditors." ***Gulf City Seafoods***, 296 F.3d at 368.

As an initial matter, Plaintiff argues the determination of whether an ordinary course transfer occurred under § 547(c)(2) is a fact question because courts must engage in a "peculiarly factual" analysis. *See* ***Braniff Airways, Inc. v. Midwest Corp.***, 873 F. 2d 805, 806 (5th Cir. 1989); ***Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Group, Inc.)***, 956 F.2d 479, 486 (4th Cir. 1992). Therefore, "the general rule is that the ordinary course of business defense

28

cannot be determined on a motion for summary judgment." *In re Ice Cream Liquidation, Inc. v. Niagara Mohawk Power Co. (In re Ice Cream Liquidation, Inc.)*, 320 B.R. 242, 250 (Bankr. D. Conn. 2005); s*ee also In re ACP Ameri-Tech Acquisition, LLC*, No. 09-90082, 2012 WL 481582, at *7 (Bankr. E.D. Tex. Feb. 14, 2012). The Belins Declaration states only: "It is common for companies utilizing assigned risk insurance to make payments only after receiving a Notice of Cancellation, within the time permitted by law and as set out in the Notice of Cancelation for reinstatement of the applicable policy." Belins Declaration at ¶ 11, pages 6-7. Plaintiff asserts this general, conclusory statement fails to provide the specific information required to establish Travelers' ordinary course defense.

For example, Travelers fails to identify specific industry standards and customary terms and conditions regarding matters such as late payments, whether it is routine to accept late payments without a notice of cancellation, and whether sending a notice of cancellation two days after an invoice for the same amount but before the "due date" is standard industry practice. Trustee asserts these omissions are "fatal" to Travelers' ordinary course defense. *Amarillo Mesquite Grill*, 355 B.R. at 835. "Where a defendant presents only the party's practices and gives no general industry standards for comparison, it has not met its burden under Section 547(c)(2)(B)." *See FBI Wind Down, Inc. v. Careers USA, Inc. (In re FBI Wind Down, Inc.)*, 614 B.R. 460, 495 (D. Del. 2020).

The Belins Declaration further states that Travelers' actions in issuing the Policy, the 01/14/19 Account Bill, the 02/11/19 Account Bill, the Cancellation Notice, the Reinstatement Notice, and the 09/10/19 WC LSRP Calculation were mandated by applicable NCCI and state insurance rules and regulations, along with the Policy, which Travelers followed. To implement mandated billing and notice requirements, Travelers sent the Account Bills as required by

applicable rules and regulations, along with Travelers' practices and procedures. Trustee points out that Travelers had to comply with these mandates as would any other insurance carrier subject to the assigned risk workers compensation regime established by Georgia's and the NCCI's rules and regulations and Travelers did so in the ordinary course of its insurance business with [Debtor] and under its standard, ordinary and required terms, just as it would have had to do with any of its other insureds in a similar circumstance. Belins Declaration at ¶ 11, pages 6-7. (emphasis added).

Plaintiff argues these statements do not meet the requirements necessary to establish the Transfer occurred in the ordinary course. First, although the Belins Declaration states Travelers sent the various invoices and notices as required by "applicable rules and regulations and Travelers practices and procedures," none of Travelers' practices and procedures were attached to the Motion. Travelers does not identify the applicable NCCI and state rules allegedly addressing why Travelers sent the notices when it did. As a result, neither the Trustee nor the Court knows whether the "rules," "regulations," and "procedures" were applicable, whether Travelers complied with them, or how they are applied in the industry.

More importantly, Plaintiff alleges there is no evidence explaining the ordinary course in the industry or the applicable rules and regulations concerning when such invoices and notices are purportedly "required" and whether what happened here was customary. Trustee argues that the entire Premium was due as of the Policy's inception but was not paid in full in January or during the first eleven days of February. Trustee states Travelers offers no evidence establishing what prompted it to change what it had been doing between December and February 11 and issue a notice threatening cancellation or if this behavior is within the ordinary course of the industry. Travelers has not met its burden to conclusively establish its ordinary course defense as a matter of law.

In its Reply, Defendant argues although the ordinary course defense involves an issue of fact, courts do in fact grant summary judgment on this defense. *See, e.g.*, ***Simon v. Gerdau MacSteel, Inc. (In re Am. Camshaft Specialties, Inc.)***, 444 B.R. 347, 366–67 (Bankr. E.D. Mich. 2011) (granting defendant summary judgment on its § 547(b)(2)(B) defense). The Trustee does not dispute that the alleged debt at issue was incurred in the ordinary course of business or financial affairs of the parties. Thus, the only issue is whether the Transfer was "made according to ordinary business terms." To support its defense, Travelers relies on the Declarations and business records attached thereto. The Amended Belins Declaration, the Supplemental Belins Declaration, and the Moylen Declaration show that the Transfer was made according to ordinary business terms as such Transfer was mandated by the Georgia WCIP and the NCCI rules and regulations for the Policy to continue in effect.

Travelers argues the Amended Belins Declaration makes clear that "[i]t is common for companies utilizing assigned risk insurance to make payments only after receiving a Notice of Cancellation, within the time permitted by law and as set out in the Notice of Cancellation for instatement of the applicable policy." Amended Belins Declaration, ¶ 11, at p. 6. Travelers asserts Ms. Belins has 20 years of experience in the industry at Travelers and is competent to give an opinion, including an expert opinion, under Rules 701, 702, and 703 of the Federal Rules of Evidence. The Trustee does not present any evidence rebutting her testimony. The Trustee contends that by "threatening" cancellation of the Policy, Traveler's engaged in "unusual collection practices," taking the transaction out of the ordinary course. As noted above, it is common for companies in the industry (those under assigned workers' compensation insurance plans) to make payments after receiving a notice of cancellation. Travelers has established through the Declarations, and the Trustee does not deny, that Travelers was required to send the Notice of

31

Cancellation pursuant to the relevant endorsement in the Policy and the NCCI rules and regulations. *See* Supplemental Belins Declaration, at ¶¶ 8 and 14.

The Court agrees it can grant summary judgment for the ordinary course defense if Travelers can meet its burden to establish the Transfer was consistent with "customary terms and conditions used by other parties in the same industry facing the same or similar problems." ***In re KLN Steel Prods. Co.***, 506 B.R. at 468–69. Moreover, Travelers has provided competent and admissible summary judgment evidence in support of its affirmative defense. What Travelers has not done, however, is  provide summary judgment evidence explaining the ordinary course in the industry or the applicable rules and regulations concerning when such invoices and notices are purportedly "required" and whether what happened here was customary. Plaintiff maintains Travelers cannot meet this burden "by simply showing that (1) its arrangement with [Debtor] is similar to the credit arrangement [Travelers] has with other debtors, or (2) the arrangement is similar to [Debtor's] arrangement with other creditors." ***Gulf City Seafoods***, 296 F.3d at 368. The Court denies summary judgment on this affirmative defense because Travelers has not met its burden for summary judgment.

## CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Motion for Summary Judgment (ECF No. 11) is GRANTED IN PART and DENIED IN PART;

It is FURTHER ORDERED that Defendant is GRANTED summary judgment that the Transfer was not a payment on account of an antecedent debt as defined under § 547(b)(2);

It is FURTHER ORDERED that Defendant is GRANTED summary judgment that the Transfer is not avoidable under § 547(c)(1) because it was a contemporaneous exchange for new value;

It is FURTHER ORDERED that Defendant is GRANTED that summary judgment the Transfer is shielded from avoidance under § 547(c)(4) because Travelers gave new value to the Debtors after the Transfer;

It is FURTHER ORDERED Travelers has provided insufficient summary judgment evidence to demonstrate the Transfer cannot be avoided under § 547(c)(2) because the Transfer was made in the ordinary course of business of the parties and according to ordinary business terms, and, as such summary judgment is DENIED; and

It is FURTHER ORDERED that all other relief requested in Defendant's Motion for Summary Judgment (ECF No. 11) is DENIED.

Defendant may, by separate pleading, file a request for attorney's fees and costs, within fourteen (14) days of entry of this Order under Fed. R. Bankr. P. 7054.

# # #